Patricia G. BURDICK *v.* Richard L. BURDICK

5-4572                                    428 S. W. 2d 248

Opinion delivered June 3, 1968

*Spencer & Spencer,* for appellant.

No brief for appellee.

Carleton Harris, Chief Justice. On July 21, 1965, Patricia Burdick, appellant herein, was granted a divorce from appellee, Richard L. Burdick, was given custody of the three minor children, and was awarded $300.00 per month as alimony and child support. In August, 1967, Mr. Burdick filed a petition requesting that he be granted custody of the minor son, Richard Leroy Burdick, Jr., and that the decree be modified by a reduction in the child support payments and elimination of all alimony. Mrs. Burdick filed a response asking that support payments be increased to $500.00 per month. On hearing, the court granted the custody of Richard Burdick, Jr., to his father, with the right for the father to leave the boy in the actual custody of an aunt in Okla-

homa, eliminated alimony,[1] and reduced child support payments to $225.00 per month.[2] At the time of the last hearing, Linda Kay, the eldest child, was 16 years of age, Richard was 15 years of age, and Elizabeth Ann was 4 years of age. From the decree so entered, appellant brings this appeal. It is first asserted by appellant that the evidence does not show such a change of conditions since the original decree as to justify cancellation of alimony and reduction of child support payments.

The proof reflects that appellee is a Major in the United States Army, and is stationed at Fort Walters, Texas, near Mineral Wells. He receives pay and allowances of $1,263.73 per month. At the time of the original divorce, Burdick held the rank of Captain, and received pay and allowances of $1,039.03 per month. Appellee admitted that he had originally agreed to pay the sum of $500.00 per month:

"* * * I agreed, we both agreed, I said I would give her $500.00 a month so she could stay at home with the baby and we agreed to $300.00 a month child support, no alimony in it, just straight child support is what we agreed on and I paid that money until actually I got in debt to where I couldn't pay the $500.00 any more, so I paid the $300.00 a month."

The $300.00 per month was taken care of by an allotment, and Burdick sent four additional checks for $200.00; however, two of these checks were not paid because of insufficient funds, and were never made good.

Burdick testified that in April, 1967, he was called by the Juvenile Court at El Dorado, and advised that his son had gotten into trouble, and that the boy wanted to live with his father. Appellee went to El Dorado, and the custody of Richard, Jr., was given to him (temporar-

[1]There is no mention of alimony at all in this decree.

[2]Appellant's brief refers to the court's order as $200.00 per month, but the transcript reflects that the order was for $225.00 per month. No brief has been filed by appellee in this case.

ily, by the juvenile court). Young Richard accompanied his father back to Texas, and entered school in Weatherford. He came back to El Dorado for a visit during the summer, stayed about three weeks, and returned to his father. The Major testified that he learned he would be sent to Vietnam around Christmas or the first of the year, and he accordingly placed the boy with his sister, Mrs. Mary Sims, at Enid, Oklahoma; Richard, Jr., attends Junior High School in Enid. After obtaining custody of the son, Burdick reduced his allotment to Mrs. Burdick to $200.00, and testified that he sent $100.00 per month to his sister to take care of young Richard. The witness testified that, after deductions of income tax, social security and the allotments, he was left with approximately $700.00 per month. He said that he was paying $100.00 per month for rent, $50.00 to $75.00 per month for gasoline, and $200.00 per month to a bank in Weatherford, having borrowed money to pay accumulated bills. He further stated that his food cost $7.00 to $7.50 a day; he had laundry and uniform expense; still further, he said:

"* * * I have social obligations which, as I told you earlier, if you don't go you're not a flight commander very long. * * * I have nothing in my bank account. In fact, I told you [his attorney] I will pay you with a postdated check. That sounds like a lot of money but at the end of the month I am broke, period."

Mrs. Burdick is employed in El Dorado, and earns $305.00 per month, with take-home pay of $246.00. She listed expenditures for the months of July, August, September and October (1967), which appear reasonable, and which average $461.25 per month. This does not include the monthly house rental, which is $100.00 per month, and Mrs. Burdick is $800.00 behind in her house rent. This fact was verified by Robert E. Hosford, who owns the property which Mrs. Burdick is renting.

As to the boy, she testified that the aunt has no tele-

phone, and that she is unable to contact her son; that she had been unable to obtain the street address; that her letters had been unanswered. Appellant stated that she and the boy had had friction because he did not wish to abide by her rules and regulations, and that he had gotten into trouble on a charge of shoplifting. She said that she had no objection when he was placed in the temporary custody of his father, and she agreed that the boy probably did not desire to live with her; however, she objected to the provision in the decree placing the actual care of the child with the aunt.

We agree that there has been no change of conditions that would justify reduction of the support money.

It need not be pointed out that general living costs are daily rising, and it is also true that the maintenance and support of the two girls will require greater financial expenditures than were necessary at the time the divorce was granted in 1965. The elder daughter, Linda, is now a junior in high school, and, of course, the younger daughter was only a baby at the time of the divorce. Since the financial situation demands that Mrs. Burdick work outside the home, it is necessary to leave Elizabeth Ann in a nursery, and this item alone amounts to $40.00 per month. Mrs. Burdick pays the G. I. Insurance on her ex-husband out of her own funds, and, as previously stated, her expenditures cannot be said to be extravagant. Certainly, it would not be proper to penalize appellant for obtaining employment, for it would appear that this step was absolutely necessary. Even then, it will be noted that she is eight months behind in her house rent. While she now has only two children to look after financially (as compared to three at the time of the divorce), it is also true that appellee's pay and allowances have been increased approximately $225.00 per month. It may be true that Major Burdick's social obligations have increased because of his promotion, but we do not think this fact has lessened his obligation to his children.

As to the custody of the boy, we are unable to say that the court erred. In the first place, it appears that he would be quite unhappy living with his mother, and she herself testified that she felt that Richard, Jr., did not desire to live with her. The record reveals that, on his last visit to El Dorado in August, the son stayed but little with his mother, preferring to stay with her parents. According to appellant's testimony, he left his mother's house when she refused to let him spend the night away from home, and thereafter, did not return.

At the time of the last hearing, young Richard was 15 years of age. While we have said many times that the paramount issue in custody cases is the welfare of the child, we have also said that, in proper cases, the wishes of the child should be given consideration. As long ago as 1906, in *Lipsey* v. *Battle*, 80 Ark. 287, 97 S. W. 49, Justice Riddick, speaking for the court, said:

"* * * Courts not only respect the rights and feelings of the parent, but also when the child is of sufficient age they give consideration to its wishes. The child in this case is nearly thirteen years of age. She expressed a decided preference to dwell with her mother. So far as this evidence shows, this mother and child are sincerely attached to each other, and this feeling should not be disregarded, nor the ties of affection sundered, unless the welfare of the child clearly demands that she be separated from her mother. We see nothing in the evidence that requires it."

This holding has been reiterated many times.

The evidence reveals that Burdick visited his son every other week, and, of course, if he is now overseas, he cannot personally maintain a home for the boy. While the present arrangement cannot be said to be entirely satisfactory, taking into consideration the apparent antipathy of Richard toward his mother, we are unable to say that the Chancellor could have rendered a more suitable order.

In accordance with the views herein expressed, the decree is reversed, with directions to reinstate the order of $300.00 per month alimony and child support; in all other respects, the decree is affirmed.